**Emile Pierre DUHAMEL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 69492.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

Randell W. Friebele, Harlingen, for appellant.

Benjamin Euresti, Jr., Dist. Atty. and Ricardo Lara, Asst. Dist. Atty., Brownsville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, § 19.03(a)(2). After finding appellant guilty, the jury returned affirmative findings to the special issues under Article 37.071, V.A.C.C.P. Punishment was assessed at death. We affirm.

Appellant was convicted of intentionally and knowingly causing the death of J___ E___ in the course of committing and attempting to commit the offense of aggravated sexual assault. Appellant raises two grounds of error. He alleges that the evidence is insufficient to support the finding that the offense took place during the commission of an aggravated sexual assault. In addition, he alleges that the trial court's denial of his motion for continuance was error.

On July 1, 1984, the deceased, a nine year-old girl, disappeared from her mother's trailer at approximately 4:00 p.m. The child's semi-nude body was found the next morning in a cornfield behind the mobile home park where she lived.

The appellant gave an extrajudicial confession to the murder of the child. In his confession, the appellant stated as follows:

On Sunday, July 1, 1984, I went to a small country store and talked to a man whom I know as Frenamore, and I purchased some Miller Lite Beer. When I was at the store I was approached by a little girl whose name I do not know. I had only seen her about twice before. I had a little dog with me that belonged to my girlfriendnd [sic] Hilda. The little girl wanted for me to give her the little dog but I told her "no" because the dog belonged to my girlfriend.

I then had a brief conversation with a janitor about possibly buying his motorcycle, however he didnot [sic] want to sell it. The little girl was still following me around. After not being able to buy the motorcycle I started walking down the road towards my trailer house and the little girl followed me.

I have marked a picture marked exhibit # 1 as the same little girl I refer to. The little girl's. name I am told is J___ E___. J___ kept following me and I started thinking about my ex-wife who I am divorced from and J___ kept asking me for the dog and I finally just said Lucile, Lucile, and I grabbed her by the shoulder and hit her with my closed fist and kept on hitting her and I noticed she had passed out[.] I remember also choking her and after I chocked [sic] she did not seem to have anymore [sic] life in her. She was dead by this time. *I then removed her panties and afterwards I don't remember.*[1] I drank some more beer there where the body laid.

. . . .

After drinking the beer and smoking some cigarettes I wondered [sic] off into the field and then made my way back to the trailer through an orchard.

*The picture that I have marked is exactly the same as I remember leaving the little girl, J___.* This same picture is attached to the confession I have given.

---

1. All emphasis is supplied by the writer of this opinion unless otherwise indicated.

The photograph mentioned in the confession shows the child lying in the cornfield, nude from the waist down, with her legs bent and spread apart. The photo shows various injuries, including dried blood around the vagina.

The State established through competent medical testimony that the deceased had been strangled and sexually assaulted with a blunt object. An autopsy revealed the presence, in the victim's vagina, of corn leaves, lacerations and acid phosphotase, a chemical found in semen. In addition, a pubic hair found on the victim's body matched a pubic hair sample taken from the appellant.

■ In Ground of Error No. 2 appellant relies on *Cruz v. State*, 629 S.W.2d 852 (Tex.App.—Corpus Christi 1982, pet. ref'd), contending that the State failed to sustain its burden of proof that the killing took place in the course of committing or attempting to commit an aggravated sexual assault.

This Court has held that "in the course of committing or attempting. to commit" an offense listed in V.T.C.A., Penal Code, § 19.03(a)(2), means conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense. *Wooldridge v. State*, 653 S.W.2d 811, 816 (Tex.Cr.App.1983); *Riles v. State*, 595 S.W.2d 858, 862 (Tex.Cr.App.1980).

In reviewing the sufficiency of the evidence to support a conviction in either a direct or circumstantial evidence case, this Court must review the evidence in the light most favorable to the jury's verdict and consider whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Burks v. State*, 693 S.W.2d 932 (Tex.Cr.App.1985). Given the appellant's statement that the photograph showed the victim "exactly the same as I remember leaving the little girl" and the presence of the appellant's pubic hair on the victim's body, we find that the evidence overwhelmingly supports the

State's theory that the killing took place in the course of the commission of a sexual assault. Ground of error two is overruled.

In his remaining ground of error, Appellant attacks the trial court's failure to grant his motion for continuance. He contends that the denial of a continuance was an abuse of the trial court's discretion and operated to deny him the effective assistance of counsel.

Appellant was indicted by a Cameron County grand jury on August 22, 1984. The court appointed Senator Hector Uribe to represent the appellant on September 5. Senator Uribe subsequently withdrew as the appellant's attorney, whereupon the court contacted Messrs. James Mardis and Randall Friebele, both partners in the same law firm. The court indicated to Mardis and Friebele that one of them would be appointed to represent the appellant, and that they could decide between themselves which one would accept the appointment.

Thereafter, the court appointed Mardis on January 31, 1985. Mardis filed several motions upon which hearing was held on February 14, 1985. The court subsequently ordered that the appellant be examined by a psychiatrist to determine his competency to stand trial. A competency hearing was held on March 4, at which both Mardis and Friebele were present. Friebele took a secondary role at the hearing. His participation included direct examination of Mardis and cross-examination of another witness. At the conclusion of the hearing, the jury found that appellant was competent to stand trial; and trial on the merits was set for May 6.

On April 24, the court *officially* appointed Friebele to represent the appellant. Two days later, Mardis filed a motion for continuance based on his physical inability to appear for trial. On April 30, Friebele also filed a motion for continuance on the grounds that he had not previously been involved in the preparation or trial of the case; he was in trial in another county during the week of April 29; and he was therefore unprepared to go to trial on May

6. The trial court denied the motion, and trial began as scheduled on May 6.

The trial judge granted Friebele's motion to have the appellant re-examined by a psychiatrist to determine appellant's sanity at the time of the offense. Apparently in anticipation of a defense of insanity, both sides questioned prospective jurors during voir dire examination on the issue of insanity. The trial court appointed a psychiatrist on May 8, two days after voir dire began. The psychiatric report was not filed until June 4, twenty days after the trial ended. However, before trial began, both parties were made aware of the fact that the appellant had refused to cooperate with the psychiatrist and thus no evaluation as to the issue of the appellant's sanity was possible.

■ The granting or denial of a motion for continuance is within the sound discretion of the trial court. *Taylor v. State*, 612 S.W.2d 566 (Tex.Cr.App.1981). Although Article 26.04(b), V.A.C.C.P. requires that appointed counsel have at least 10 days to prepare for trial, this Court has consistently held that actual preparation time, rather than the date of formal appointment, will determine whether counsel has had sufficient time to prepare. *Hamel v. State*, 582 S.W.2d 424 (Tex.Cr.App.1979); *Henson v. State*, 530 S.W.2d 584 (Tex.Cr.App.1975). In order that this Court may find an abuse of discretion in refusing to grant a motion for continuance, there must be a showing that the defendant was prejudiced by his counsel's inadequate preparation time. *Hernandez v. State*, 643 S.W.2d 397, 399–400 (Tex.Cr.App.1983); *Sanne v. State*, 609 S.W.2d 762, 776 (Tex.Cr.App.1980).

In the instant case, Friebele had notice as early as January of 1985 that either he or Mardis would be appointed to represent the appellant. After Mardis was appointed to serve as the appellant's counsel, it is apparent that Friebele was actively participating in the preparation of the appellant's

defense from at least March 4, 1985, the date of the competency hearing.

Other than insufficient time to prepare, the only specific claim appellant raises to support a showing of prejudice is the trial court's failure to continue the trial until the psychiatric report was ready. Appellant contends that the denial of the continuance rendered him unable to prepare an insanity defense.[2]

■ The refusal to grant a continuance on the ground that defense counsel had not had an opportunity to examine the psychiatrist's report is not error where the psychiatrist ultimately finds no evidence of insanity. *Hintz v. State*, 396 S.W.2d 411 (Tex. Cr.App.1965); *McIntyre v. State*, 360 S.W.2d 875, 172 Tex.Crim.R. 510 (1962), cert. denied, 371 U.S. 867, 83 S.Ct. 130, 9 L.Ed.2d 104. Since the report in appellant's case indicated that the psychiatrist was unable to make a determination regarding appellant's sanity, and since there is nothing in the record to show that appellant would have offered into evidence either the report or the psychiatrist's testimony, we find that appellant was not prejudiced by the delay in filing the report.

■ Under the facts of this case, we can not find that the trial court's failure to grant appellant's motion for continuance resulted in prejudice to the appellant, either because of the amount of time available to his counsel to prepare for appellant's trial or the delay in filing the psychiatric report. Absent a showing of prejudice, we can not agree that the trial court abused its discretion in overruling appellant's motion for continuance.

■ Closely intertwined in Ground of Error No. 1 is appellant's contention that the refusal to grant a continuance operated to deprive him of the effective assistance of counsel. The only specific matter that appellant raises to support his claim of ineffective assistance of counsel is the fact that the psychiatrist's report was not filed be-

2. We note that at no time did appellant file a notice of intent to raise insanity as a defense as required by Art. 46.03(2), V.A.C.C.P.

fore trial began. Having previously found that the delayed psychiatric report did not harm appellant, we see no basis in his claim that he was deprived of the effective assistance of counsel.

Having considered appellant's grounds of error and finding no reversible error, we affirm the judgment of the trial court.

MILLER, J., concurs in result.